IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 4, 2020 Session

## IN RE ESTATE OF DONALD COWAN

**Appeal from the Circuit Court for Davidson County**
**No. 18P-2001    David Randall Kennedy, Judge**

_____

### No. M2019-01597-COA-R3-CV

_____

The estate of the decedent appeals the trial court's decision to grant the widow's Tenn. R. Civ. P. 12.02(6) motion to dismiss the estate's complaint for failure to state a claim upon which relief can be granted. The complaint, filed in 2019, sought rescission of a quitclaim deed executed by the decedent in 1990 that created a tenancy by the entirety with his wife. The complaint alleged that the decedent executed the deed shortly after the marriage in consideration of and reliance on "a contract" between the spouses. The complaint alleged that the contract obligated the husband "to create a tenancy by the entirety" and, in return, the wife was "obligated to cohabit with him and to provide the love, affection and companionship that was essential for a 'long and enduring marriage.'" Although the couple remained married until the decedent's death in 2018—28 years after they married—the complaint alleged that the 1990 deed should be rescinded for the failure of consideration and the failure of a condition subsequent. The complaint additionally asserted that the wife was unjustly enriched by the conveyance and asked that a constructive trust be imposed on the property. The trial court dismissed the complaint, finding that it did not allege facts that would give rise to any obligation upon the wife because the deed unambiguously evinced the husband's intent to convey the property as a gift. The court also found, *inter alia*, the complaint was barred by the statute of limitations applicable to each claim, the doctrine of gross laches, and the statute of frauds. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT, J., joined. RICHARD H. DINKINS, J., not participating.

Winston S. Evans, Nashville, Tennessee, for the appellant, Estate of Donald Cowan Sr. and Sydney Rogers Cowan.

Andra J. Hedrick, Hilary Clair Dennen, and Jack Wright Robinson, Jr., Nashville, Tennessee, for the appellee, Ruthie Roberts Cowan.

# OPINION

In 1966, Donald Cowan and his first wife, Mildred Cowan, purchased a home and nine acres of land on Lynwood Boulevard in Belle Meade, Tennessee ("the Property").[1] The couple lived on the Property with their three children until they divorced in 1989. Mr. Cowan acquired sole title to the Property in the divorce.

On April 5, 1990, Mr. Cowan married Ruthie Roberts ("Mrs. Cowan"). Three months later, on July 31, 1990, Mr. Cowan executed a quitclaim deed conveying the Property to himself and Mrs. Cowan as tenants by the entirety. Pertinent to the issues on appeal, the quitclaim deed provided, *inter alia*, that Mr. Cowen was conveying his interest "[f]or and in consideration of love and affection, and in contemplation of a long and enduring marriage." The parties were still married when Mr. Cowan died in November 2018, following 28 years of marriage.

This action was commenced in March 2019. The amended complaint, which is the pleading at issue in this appeal, was filed by Sydney Rogers Cowan as the personal representative of Mr. Cowan's estate ("the Estate").[2] Some of the more pertinent allegations in the amended complaint read as follows:

6. Mr. Cowan resided in the Cowan Family Home from 1966 until his death on November 27, 2018.

7. Mr. Cowan's first wife was Mildred Cowan.

8. In 1952, Mr. Cowan married Mildred Cowan.

9. Donald Cowan, Jr. ["Don"], Mary Cowan ["Mary"], and Anne Pennington Cain ["Anne"] are the children who were born to Mr. Cowan and Mildred during their marriage.

. . .

---

[1] Because the complaint was dismissed pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief can be granted, the material facts stated herein are taken from the amended complaint and the numerous exhibits attached thereto. Some additional non-material facts, which are taken from other documents in the record as well as the parties' briefs, are included for context and flow.

[2] The initial complaint was filed in January 2019 by Mr. Cowan's residual beneficiaries. An amended complaint was filed in March 2019, at which time Sydney Rogers Cowan, acting in her capacity as the personal representative of the Estate, was substituted as the plaintiff.

11. On August 22, 1966, Mr. Cowan and Mildred acquired the Cowan Family Home.

12. During 1989, Mr. Cowan and Mildred were divorced.

13. On March 27, 1989, Mildred quitclaimed her interest in the Cowan Family Home to Mr. Cowan. At that time, Mr. Cowan became the sole owner of the Cowan Family Home.

14. On December 31, 1989, Ruthie and Mr. Cowan met at a New Year's Eve party.

15. On April 5, 1990, Mr. Cowan and Ruthie were married.

16. Ruthie signed the license for her marriage to Mr. Cowan [Exhibit 1].

17. After marrying Mr. Cowan, Ruthie briefly lived with him in the Cowan Family Home.

18. Prior to July of 1990, Ruthie moved from the Cowan Family Home and returned to her previous residence at the Wellington Arms Condominiums [in] Nashville, TN 37205.

19. After returning to her previous residence at the Wellington Arms Condominiums, Ruthie refused to cohabit with Mr. Cowan unless he "put her name on the deed" to the Cowan Family Home.

20. Ruthie promised and represented to Mr. Cowan that she would cohabit with him if he created a tenancy by the entirety by which Mr. Cowan and she would be equal owners of the Cowan Family Home.

21. Relying on Ruthie's promise and representation, Mr. Cowan agreed to create a tenancy by the entirety by which she would become an equal owner of the Cowan Family Home.

22. Ruthie then retained attorney Ruth Kinnard to prepare the appropriate quitclaim deed by which the tenancy by the entirety would be created ["the Quitclaim Deed"].

23. After Ms. Kinnard had prepared the Quitclaim Deed, Ruthie and Mr. Cowan went to the office of Ms. Kinnard to sign it.

24. While at the office of Ms. Kinnard, Mr. Cowan signed the Quitclaim Deed.

25. Mr. Cowan signed the Quitclaim Deed in reliance on Ruthie's promise and representation that she would cohabit with him.

26. However, Ruthie's promise and representation was false. She never had any intention of cohabiting with Mr. Cowan or keeping her promise.

27. A true and correct copy of the Quitclaim Deed is Exhibit 2.

28. The Quitclaim Deed was placed of record on July 31, 1990 at Book 8164, Page 253, Register's Office for Davidson County, Tennessee.

29. As the Quitclaim Deed recites, it was given "[f]or and in consideration of love and affection, and in contemplation of a long and enduring marriage."

30. After Mr. Cowan signed the Quitclaim Deed, Ruthie never cohabited with him. She continued to live in her condominium at Wellington Arms. She did not even change her driver's license to reflect the address of the Cowan Family Home. She led a life which was in essence a separate life from Mr. Cowan.

31. Ruthie did not give love, affection or support to Mr. Cowan.

32. The companionship which Ruthie gave to Mr. Cowan was minimal.

33. Ruthie would not even come to the Cowan Family Home except at dinner time on four or five nights each week and on those rare occasions when a member of her family came to Nashville to visit her.

34. It was a common occurrence for Ruthie not to come to the Cowan Family Home or to answer her telephone for two or three days. During such occurrences, neither Mr. Cowan nor any member of his family had any knowledge of where Ruthie was or might have been. On one occasion in 2013, her whereabouts were unknown to Mr. Cowan or to any of his family for five days.

35. Ruthie even filed criminal charges against Mr. Cowan and testified against him as a prosecuting witness at the trial of those charges. The Court determined that the charges were false and dismissed them.

36. On May 11, 1994 - approximately three years after she had married Mr. Cowan - Ruthie purchased a vacation home near Beersheba Springs in Grundy County, Tennessee ["the Beersheba Springs Property"]. She paid $108,750 for that property.

37. In order to pay for the Beersheba Springs Property, Ruthie borrowed $108,750 from Nations Bank in Augusta, Georgia.

38. In the deed of trust which secured the loan from NationsBank, Ruthie represented that she was unmarried. [Exhibit 3].

39. Throughout the marriage, Mr. Cowan provided financial support to Ruthie which approximated $4,000 per month. That financial support included monthly checks in the amount of $3,000 each. It also included payment of Ruthie's expenses for various items, including car payments, gasoline, hair appointments, exercise clubs, and medicine.

40. Instead of cashing or depositing the checks as Mr. Cowan had written them, Ruthie engaged in the criminal activity of altering those checks to increase the amount of the checks. *See*, Checks #4163, #4380, # 4412, [Collective Exhibit 4].

41. On other checks, Ruthie changed the name of the payee to herself. *See*, Checks #3767 and #4286. [Exhibit 5].

42. In order to stop Ruthie from persisting in this criminal conduct, Mr. Cowan began writing "no alterations permitted" on the checks. *See*, Checks #4382, #4452 and #4524. [Collective Exhibit 6].

43. The lack of support and abuse which Ruthie inflicted upon Mr. Cowan is reflected by Check # 4294 and the stub for that check. [Exhibit 7]. That check was dated September 2, 2002, was payable to Ruthie, was in the amount of $300, and was for her Beersheba Springs Property. On the stub for that check, Mr. Cowan wrote as follows:

*Another cheque![3]*
*For Beersheeba that I do not own!!!*
*Blackmail!!!*

44. Also, Ruthie secretly intercepted checks which were drawn on Mr. Cowan's investment account and mailed to him at the Cowan Family Home. After intercepting those checks, Ruthie deposited them to her own bank account and did so without the knowledge or consent of Mr. Cowan. Upon information and belief, it is alleged that Ruthie forged Mr. Cowan's endorsement to those checks.

---

[3] Mr. Cowan was born in England; thus, the spelling "cheque."

45. Upon discovering these wrongful actions by Ruthie, Mr. Cowan had all important mail, such as bank statements and statements for investment accounts, sent to the address of his son, Don.

46. Instead of giving love, affection and support to Mr. Cowan, Ruthie stole from him.

47. Ruthie provided no financial contribution to the marriage.

48. Later, Ruthie rented a post office box in her name at the Belle Meade branch of the United States Postal Service ["USPS"]. She then gave instructions for the USPS to forward to her post office box all mail which was addressed to anyone at the Cowan Family Home. This included mail addressed to Mr. Cowan or to his daughter, Mary [Cowan] (who was then living at the home so she could care for Mr. Cowan). Ruthie did this without the knowledge or consent of Mr. Cowan or Mary.

49. Ruthie also removed the name of "Cowan" from the mailbox at the Cowan Family Home.

50. By her actions, Ruthie alienated the family, friends and caregivers of Mr. Cowan or drove them away.

.   .   .

64. Because Ruthie would not stay with Mr. Cowan or care for him, Mary returned to the Cowan Family Home from her home in Jackson, Tennessee during the latter part of 2014 in order to care for Mr. Cowan. She continued to live there and care for Mr. Cowan until he died on November 27, 2018. Her care of Mr. Cowan included preparation of the breakfast and luncheon meals for Mr. Cowan.

65. Instead of welcoming Mary [Cowan] and the care which Mary was providing, Ruthie was hostile to Mary and demanded that she live in only one of the many vacant rooms in the home. She referred to Mary as a "guest."

66. Ruthie often hid the medicine which had been prescribed for Mr. Cowan or interfered with the caregivers who were attempting to administer the medicine as had been prescribed for Mr. Cowan.

67. On other occasions, Ruthie demanded that Mr. Cowan's children and grandchildren leave the Cowan Family Home.

On October 19, 2018, Mr. Cowan filed for divorce, but he died one month later, on November 27, 2018, and the divorce action abated because of his death. This action was commenced four months later, in March of 2019.

Mrs. Cowan responded to the amended complaint by moving to dismiss the action under Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief can be granted. She asserted there was no failure of consideration because the conveyance was a gift. Additionally, she asserted that the claims were barred by the statutes of limitation, the statute of frauds, and the doctrine of gross laches.

In a detailed and thorough final order entered on August 6, 2019, the trial court granted Mrs. Cowan's Rule 12.02(6) motion to dismiss all claims asserted in the amended complaint. The court held that the deed unambiguously established Mr. Cowan's intent to convey the Property as a gift. Because the deed was unambiguous, the court reasoned that no extrinsic evidence could prove Mrs. Cowan's alleged agreement to cohabit with Mr. Cowan. The court also found the allegations failed to meet the elements of a claim for unjust enrichment. Further, the trial court found the claims were time-barred by the applicable statutes of limitations, the statute of frauds, and the doctrine of gross laches. The court reasoned that Mrs. Cowan's purported obligations were not "continuing" in nature and, therefore, any limitation period began to run when the deed was executed in 1990— nearly 30 years before the action was filed. As for the statute of frauds, the court reasoned that the deed lacked the signature of Mrs. Cowan, who was the "party to be charged." Thus, the trial court rejected the Estate's contention that Mrs. Cowan's signature on the marriage license fulfilled the signed writing requirement. Finally, the trial court found the doctrine of gross laches applied because the Estate failed to explain the 28-year delay in filing suit.

Based on the foregoing, the trial court dismissed the amended complaint in its entirety. This appeal followed.

## ISSUES

The Estate presents numerous issues on appeal—a total of 20, including sub-issues.[4] We have determined the dispositive issue is whether the Estate's claims are time-barred.

---

[4] The plethora of issues presented by the Estate are summarized and rephrased as follows:

(1) Whether the trial court erred in finding the deed unambiguously showed Mr. Cowan's intent to convey the property as an unconditional gift, rendering inadmissible any extrinsic evidence to the contrary.
(2) Whether the trial court erred in finding the complaint failed to allege facts that, if true, would justify rescinding the deed on equitable grounds.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted under Tennessee Rule of Civil Procedure 12.02(6) "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). A motion to dismiss under Rule 12.02(6) admits all relevant and material allegations in the complaint but asserts the "facts do not constitute a cause of action." *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). Stated another way, by filing a motion to dismiss, the defendant "admits the truth of all of the relevant and material allegations contained in the complaint [and] . . . asserts that the allegations fail to establish a cause of action." *Leach v. Taylor*, 124 S.W.3d 87, 90 (Tenn. 2004).

When considering a motion to dismiss under Tenn. R. Civ. P. 12.02(6), courts are "required to take the relevant and material factual allegations in the complaint as true and to construe liberally all allegations in favor of the plaintiff." *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011).

The trial court's ruling on a motion to dismiss as well as its interpretation of deeds involve questions of law. *Id.*; *Griffis v. Davidson Cty. Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005). We review a court's decision on a question of law de novo with no presumption of correctness. *See Lind*, 356 S.W.3d at 895.

## ANALYSIS

"Statutes of limitations promote fairness and justice. . . . They are based on a presumption that persons with the legal capacity to litigate will not delay bringing suit on a meritorious claim beyond a reasonable time." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). They serve multiple purposes, including preventing "undue delay in filing lawsuits, . . . 'avoid[ing] the uncertainties and burdens inherent in pursuing and defending stale claims,' and . . . 'ensur[ing] that evidence is preserved and facts are not obscured by the lapse of time or the defective memory or death of a witness.'" *Id.* (citations omitted). To determine which limitation period governs, Tennessee courts "consider the legal basis of the claim and then consider the type of injuries for which damages are sought." *McFarland v. Pemberton*, 530 S.W.3d 76, 109

---

(3) Whether the trial court erred in finding the deed was not a "continuing contract" and was barred by the applicable statutes of limitations.

(4) Whether the trial court erred by finding the statute of frauds applies to the Estate's claims.

(5) Whether the trial court erred by finding the claims were barred by the doctrine of gross laches when Mrs. Cowan failed to allege that she was prejudiced by the delay in filing and suits between spouses are against public policy.

(Tenn. 2017) (quoting *Benz-Elliot v. Barrett Enters., L.P.*, 456 S.W.3d 140, 151 (Tenn. 2015)).

The basis of the Estate's first three claims is the failure of consideration or condition subsequent in a deed or contract. The Estate also asserted an unjust-enrichment claim based on Mrs. Cowan's alleged knowing misrepresentation. The trial court found three statutes of limitation could apply to the Estate's claims: (1) the three-year period for fraud, *see* Tenn. Code Ann. § 28-3-105; (2) the six-year period for breach of contract, *see id.* § 109; and (3) the 10-year period for actions not otherwise specified, *see id.* § 110. But the court concluded it was unnecessary to determine which statute applied because the Estate's claims were filed nearly 30 years after the deed was executed. We agree.

The complaint alleged that Mrs. Cowan never cohabited with Mr. Cowan, never changed her permanent address, and essentially lead a "separate life." Further, the complaint alleged that Mrs. Cowan provided "minimal" companionship to Mr. Cowan, filed false criminal charges against Mr. Cowan, and siphoned Mr. Cowan's funds by forging checks. Significantly, the complaint alleged that Mr. Cowan wrote a check to Mrs. Cowan in 2002 with the memo, "Another cheque! For Beersheeba that I do not own!!! Blackmail!!!"[5]

Liberally construing the complaint for the Estate, it is fathomable Mr. Cowan did not immediately know that Mrs. Cowan had no intent to move back to the Property. Nonetheless, no reasonable person such as Mr. Cowan would believe Mrs. Cowan intended to keep her purported promise to cohabit with him and provide the "love and affection" necessary for a "long and enduring marriage" by 2002.

"[W]hen the terms of a contract have been breached, 'the statute of limitations begins to run when a contracting party first knows or should know that the contract will not be performed.'" *Dobson v. Marion Cty.*, No. M2004-02154-COA-R3CV, 2006 WL 1026422, at *4 (Tenn. Ct. App. Apr. 18, 2006) (quoting *Wilkins v. Third Nat'l Bank in Nashville*, 884 S.W.2d 758, 762 (Tenn. Ct. App. 1994)). Accordingly, we agree with the trial court's conclusion that it was unnecessary to determine which statute of limitations applied because, whichever limitation period applied, it had undoubtedly expired long before Mr. Cowan's death.

Nevertheless, the Estate argues, relying on *Aschbacher v. Woods*, No. M2003-02616-COA-R3CV, 2005 WL 473468, at *1 (Tenn. Ct. App. Mar. 1, 2005), that none of the limitation periods started until Mr. Cowan either filed for divorce or died. We find this argument unconvincing. In *Aschbacher*, a 67-year-old aunt executed a deed conveying her residence to her niece in exchange for the niece's promise to take care of her. *Id.* The niece

---

[5] The complaint does not explain Mr. Cowan's use of the term "blackmail."

breached the agreement five years later, in 1992, and then again in 1995, when the niece refused the aunt's request for post-operative care. *Id.* The last time the niece responded to the aunt's request for assistance was in 1998. *Id.* In 2004, the aunt filed an action to rescind the deed for the failure of consideration. *Id.*

On appeal, we found the "execution and delivery of the deed to the [niece], on the one hand, and the promise of the [niece] to provide the necessary care, on the other, established a continuing contract." *Id.* We analogized the contract to one for installment payments, "where there is an obligation by one party to make payments on specified future dates." *Id.* at *2 n.1. Accordingly, we concluded that "each time [the niece] failed to respond to her aunt's request for care was a breach of the agreement and the six-year statute of limitations began to run." *Id.* at *2.

Unlike the niece's obligation in *Aschbacher* to provide periodic care, Mrs. Cowan's supposed obligation was to "cohabit" with Mr. Cowan and to provide the "love and affection" necessary for "a long and enduring marriage" commencing with the execution of the deed. Thus, Mrs. Cowan's alleged duties under "the contract" were to commence immediately upon the execution of the deed, not at some unknown future date. The complaint alleged, thus we must accept as true, that Mrs. Cowan never cohabited with Mr. Cowan after the deed was executed. Moreover, the complaint alleged that Mrs. Cowan immediately breached, and continued to breach for the next 28 years, her contractual duties to provide the love and affection necessary for a long and enduring marriage. Thus, the claims asserted by the Estate accrued immediately upon or shortly after the deed was executed in 1990.

Based on the foregoing, we have determined that the Estate's claims for rescission, and its claim for unjust enrichment and/or resulting trust resulting from Mrs. Cowan's failure to cohabit with Mr. Cowan and provide the "love and affection" necessary for a "long and enduring marriage," are time-barred under the applicable statutes of limitation.[6]

---

[6] All other issues raised by the Estate are pretermitted by this determination. Nevertheless, we affirm the trial court's rulings on the grounds for dismissal as stated in its final order in all respects.

- 10 -

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Estate of Donald Cowan.

_____
FRANK G. CLEMENT JR., P.J., M.S.